1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2
      * * * * * * * * * * * * * *     *
3     STEPHEN E. KELLER,             *
      individually and on behalf     *
4     of all others similarly        *
      situated,                      *
5              Plaintiff,            *
                                     *
6              vs.                   *     CIVIL ACTION
                                     *     No. 08-10612-JLT
7     FIRST MARBLEHEAD CORP.,        *
      INC., et al                    *
8              Defendants.           *
      * * * * * * * * * * * * * *     *
9     SHEET METAL WORKERS            *
      LOCAL 28 PENSION FUND,         *
10    individually and on behalf     *

11    of all others similarly        *
      situated,                      *
12             Plaintiff,            *
                                     *
13             vs.                   *     CIVIL ACTION
                                     *     No. 08-10650-JLT
14    FIRST MARBLEHEAD CORP.,        *
      INC., et al                    *
15             Defendants.           *
      * * * * * * * * * * * * * *     *
16    CHARLES J. BYRNE,              *
      individually and on behalf     *
17    of all others similarly        *
      situated,                      *
18             Plaintiff,            *
                                     *
19             vs.                   *     CIVIL ACTION
                                     *     No. 08-10660-JLT
20    FIRST MARBLEHEAD CORP.,        *
      INC., et al                    *
21             Defendants.           *
      * * * * * * * * * * * * * *     *
22

23

24

25

```
 1    * * * * * * * * * * * * * *
      RYAN EDMUNDSON,            *
 2    individually and on behalf *
      of all others similarly    *
 3    situated,                  *
                 Plaintiff,      *
 4                               *
                 vs.             *        CIVIL ACTION
 5                               *        No. 08-10699-JLT
      FIRST MARBLEHEAD CORP.,    *
 6    INC., et al               *
                 Defendants.     *
 7    * * * * * * * * * * * * * *
      NAYEREH DEHGAN, individually*
 8    and on behalf of all others *
      similarly situated,        *
 9               Plaintiff,      *
                               *
10               vs.             *        CIVIL ACTION
                               *        No. 08-10612-JLT
11    FIRST MARBLEHEAD CORP.,    *
      INC., et al               *
12               Defendants.     *
      * * * * * * * * * * * * * *
13    ROBERT M. LARGENT,         *
      individually and on behalf *
14    of all others similarly    *
      situated,                    *
15               Plaintiff,      *
                               *
16               vs.             *        CIVIL ACTION
                               *        No. 08-10796-JLT
17    FIRST MARBLEHEAD CORP.,    *
      INC., et al               *
18               Defendants.     *
      * * * * * * * * * * * * * *
19    ANDREW ALLISON,            *
      individually and on behalf *
20    of all others similarly    *
      situated,                  *
21               Plaintiff,      *
                               *
22               vs.             *        CIVIL ACTION
                               *        No. 08-10815-JLT
23    JACK KOPNISKY,             *
      INC., et al               *
24               Defendants.     *
      * * * * * * * * * * * * * *
25
```

```
 1

 2                  BEFORE THE HONORABLE JOSEPH L. TAURO
                      UNITED STATES DISTRICT JUDGE
 3                            MOTION HEARING

 4   A P P E A R A N C E S

 5              SAXENA WHITE
                2424 N. Federal Highway, Suite 257
 6              Boca Raton, Florida 33431
                for the plaintiff
 7              By:  Joseph E. White, III, Esq.
                     Peter A. Lagorio, Esq.
 8

 9              GILMAN AND PASTOR, LLP
                225 Franklin Street, 16th Floor
10              Boston, Massachusetts 02110
                for the plaintiff
11              By:  David Pastor, Esq.

12

13              COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
                58 South Service Road, Suite 200
14              Melville, New York 11747
                for the plaintiff
15              By: Mario Alba, Jr., Esq.

16              McGOVERN & GANEM, P.C.
                21 Merchants Row, 4th Floor
17              Boston, Massachusetts 02109
                for the plaintiff
18              By: Clayton R. Henderson, Esq.

19

20              ROBBINS UMEDA & FINK, LLP
                610 West Ash Street, Suite 1800
21              San Diego, California 02101
                for the plaintiff
22              By: Gregory E. Del Gaizo, Esq.

23

24

25
```

1    **APPEARANCES, CONTINUED**

2

3              THORNTON & NAUMES LLP
               100 Summer Street, 30th Floor
               Boston, Massachusetts 02110
4              for the plaintiff
               By: Robert T. Naumes, Esq.
5                  Andrea Marino, Esq.

6

7              SHAPIRO HABER & URMY LLP
               53 State Street
8              Boston, Massachusetts 02109
               for the plaintiff
9              By: Adam M. Stewart, Esq.

10

11             WEISER LAW FIRM P.C.
               121 N. Wayne Avenue, Suite 100
12             Wayne, Pennsylvania 19087
               for the plaintiff
13             By: Jeffrey J. Ciarlanto, Esq.

14

15

16             PARKER, ANKNER & HORSTMANN LLP
               200 Berkeley Street, 16th Floor
               Boston, Massachusetts 02116
17             for the plaintiff
               By: Peter C. Horstmann, Esq.

18

19

20             MOTLEY RICE LLC (SC)
               28 Bridgeside Boulevard
21             Mt. Pleasant, South Carolina  29464-4399
               for the defendants
22             By: James M. Hughes, Esq.

23

24

25

1    **APPEARANCES, CONTINUED**

2

3         WILMER HALE LLP
             60 State Street
4         Boston, Massachusetts 02109
             for the defendants
5         By: William H. Paine, Esq.

6

7

8

9

10

11

12

13

14

15                         Courtroom No. 22
16                         John J. Moakley Courthouse
                         1 Courthouse Way
17                         Boston, Massachusetts 02210
                         August 26, 2008
18                         2:15 p.m.

19

20

21                CAROL LYNN SCOTT, CSR, RMR
                 Official Court Reporter
22            One Courthouse Way, Suite 7204
               Boston, Massachusetts 02210
23                   (617) 330-1377

24

25

<u>P R O C E E D I N G S</u>

1

2          **THE CLERK:**  All rise for the Honorable Court.

3          (Whereupon, the Court and the Clerk conferred.)

4          **THE CLERK:**  Civil Action No. 08-10612, <u>Keller, et</u>

5   <u>al versus First Marblehead Corporation</u>.  Who is here for

6   them?

7          **MR. PAINE:**  Defendants.

8          **THE CLERK:**  Okay.  What is your name?

9          **MR. PAINE:**  Bill Paine.

10         **THE CLERK:**  Oh, yes.  You looked familiar.

11         **MR. PAINE:**  We're the same defendants with respect

12  to all the cases.

13         **THE CLERK:**  Okay.  Then civil action No. 08-10650,

14  <u>Sheet Metal Workers Local 28 versus First Marblehead</u>.

15         **MR. WHITE:**  Good afternoon, Your Honor.  Joseph

16  White from Saxena White.  This is Peter Lagorio from Saxena

17  White and Jim Hughes from Motley Rice.

18         **THE COURT:**  Okay.  Thank you.

19         **THE CLERK:**  And civil action No. 08-10660, <u>Byrne</u>

20  <u>versus First Marblehead</u>.

21         **MR. PASTOR:**  Yes, David Pastor from Gilman and

22  Pastor for the plaintiff.

23         **THE CLERK:**  Thank you.

24         <u>Edmundson versus First Marblehead</u>, 08-10699.

25         **MR. ALBA:**  Good afternoon, Your Honor.  Mario Alba,

1    Jr. from Coughlin Stoia Geller Rudman Robbins for the
2    plaintiff and also for proposed lead plaintiff movant
3    Inter-Local Pension Fund.  And with me today is my local
4    counsel Adam Stewart from the law firm of Shapiro, Haber &
5    Urmy.
6            THE COURT:  Okay.  Thank you.
7            THE CLERK:  08-10712, Dehghan versus First
8    Marblehead.
9            MR. PAINE:  Bill Paine.
10           THE CLERK:  She's not here, that's the one.
11           THE COURT:  She is the one who is absent?
12           THE CLERK:  No, the first case and the second case.
13   And the fifth case, Your Honor, sorry, they are absent so
14   far, plaintiff.
15           THE COURT:  Same person?
16           THE CLERK:  Same person.
17           THE COURT:  Okay.
18           THE CLERK:  Largent versus First Marblehead.
19           MR. PASTOR:  Yes, David Pastor for the plaintiff.
20           THE CLERK:  Okay.  Thank you.
21           Allison versus Kopnisky, et al, 08-10815.
22           MR. HENDERSON:  Counsel for the plaintiff Allison,
23   Clayton Henderson from McGovern & Ganem.
24           THE CLERK:  Thank you.  And 08-10813, Carmona v.
25   Kopnisky, et al.

1          **MR. DEL GAIZO:**  Yes, Your Honor.  Gregory Del Gaizo

2    from Robbins Umeda & Fink for the plaintiff.

3          **MR. HENDERSON:**  And Clayton Henderson from McGovern

4    again.

5          **THE CLERK:**  And 08-10956, <u>Vail versus Berkley, et</u>

6    <u>al</u>.

7          **MR. CIARLANTO:**  Jeffrey Ciarlanto from the Weiser

8    Law Firm, for the plaintiff.

9          **MR. HORSTMANN:**  Good afternoon, Your Honor.  Pete

10   Horstmann.  We're local counsel for Mr. Ciarlanto and Brian

11   Murphy.

12         **THE COURT:**  Okay.

13         **THE CLERK:**  Thank you.

14         **THE COURT:**  We have two -- I am sorry.

15         **MR. NAUMES:**  You missed us, Your Honor.  I'm sorry.

16         **THE COURT:**  We missed you?

17         **MR. NAUMES:**  Yes.

18         **THE CLERK:**  Which one were you?

19         **MR. NAUMES:**  Robert Naumes, Thornton & Naumes.

20   We're for Baltimore County Employees, Your Honor.

21         **THE CLERK:**  That was the first one, Keller.

22         **MR. NAUMES:**  And Andrea Marino is with Thornton &

23   Naumes.  We're local counsel for Andrei Rado from Labaton.

24         **THE CLERK:**  And that's in the 08-10612 case, Judge.

25         **THE COURT:**  I thought counsel was absent --

1          **THE CLERK:**  She is.  The first one, she's for

2     Keller.  These people are here for Baltimore which is

3     another plaintiff.

4          **MR. RADO:**  Your Honor, my firm filed a lead

5     plaintiff motion.  We do not represent a named plaintiff in

6     the action, only a class member that has moved for lead

7     plaintiff.

8          **THE COURT:**  Okay.

9          **MR. HUGHES:**  Yes, Your Honor, James Hughes, Motley

10    Rice, also representing the movant Pembroke Pines and

11    Universal GMBH.

12         **THE COURT:**  All right.  Thank you.  Now at least we

13    know who is here.  And if nothing else, we certainly have a

14    quorum.  If there is anybody who is not here, I am just

15    going to -- we are not going to throw them under the bus as

16    the saying goes but we are going to go ahead and take care

17    of our business.

18         The first item of business I want to take care of

19    is to hear anybody who objects to consolidation of these

20    cases.  Other than me.

21         (Laughter.)

22         **THE COURT:**  I saw this was First Marblehead and I

23    said, Great, I said it has to be that I get out of this

24    case, you know, living in Marblehead as I do.  And there is

25    not a bit of Marblehead in it except me.

1          (Laughter.)

2          **THE COURT:**  But let's give anybody an opportunity

3     to speak against the consolidation, if they want to do so.

4          And the record will reflect that no one has

5     indicated a desire to speak against the consolidation so I

6     am going to consolidate these cases.

7          And the first thing I want to do with the

8     consolidated cases is to organize the case management here

9     and to appoint someone as lead counsel.  Now, if you want to

10    be heard on -- I have read a lot of material on various lead

11    counsel.  There are two particular applicants.  One is, what

12    is it, Universal Investment Gesellschaft, do I pronounce

13    that correctly?

14         **MR. HUGHES:**  Yes Your Honor.

15         **THE COURT:**  That is one.  And they are the largest

16    shareholder, which doesn't mean that that is an absolute;

17    but in addition to being the largest shareholder, do you

18    want to argue anything about your worthiness as potential

19    lead counsel here or how do you want to handle it?

20         **MR. HUGHES:**  Well, Your Honor, Universal is

21    actually moving for lead plaintiff with the Pembroke Pines

22    Police and Fire Pension Fund as a two-member group and two

23    other movants have argued against our appointment.  So

24    however you want to hear arguments.

25         **THE COURT:**  Well, go ahead.  Tell me why I should

1   appoint you.  It is not just the German company, you have a

2   joint venture with somebody?

3           **MR. HUGHES:**  Yes, we have the Pembroke Pines Fire

4   and Police, the Pension Fund which is based in Florida.

5           **THE COURT:**  Is that listed as an independent

6   plaintiff here?

7           **MR. HUGHES:**  No, Your Honor.  We filed a joint

8   motion for appointment as lead plaintiff.

9           **THE COURT:**  This is the Baltimore County Employees

10  Retirement System?

11          **MR. HUGHES:**  No, Your Honor.

12          **MR. RADO:**  That's the competing movant, Your Honor.

13          **THE COURT:**  The Pembroke Pines Fire and Police

14  Pension Fund, that is what I am looking for.

15          **MR. HUGHES:**  Yes, Your Honor.

16          **THE COURT:**  They are not a plaintiff in the case as

17  such?

18          **MR. HUGHES:**  They are a member of the putative

19  class but they did not file a complaint.

20          **THE COURT:**  Okay.  All right.  Now, I have been

21  interrupting you.  Go ahead, tell me what, in addition to

22  the financial interests that you have, why should I appoint

23  you?

24          **MR. HUGHES:**  You should appoint Universal and

25  Pembroke Pines primarily because we have over 23 million

1    dollars in losses which is more than four times the next

2    competing lead plaintiff movant.

3          We have been attacked by two other movants as not

4    being suitable because Universal is a foreign investor and

5    they claim that the Court should not appoint us because we

6    would be subject to a unique defense, a *res judicata*

7    defense.  And we don't think that this is a very good

8    argument.

9          **THE COURT:**  Why *res judicata*?  Is there a case

10   going on in Europe?

11         **MR. HUGHES:**  No.  Their argument is that if we were

12   to go to trial and the Court made a judgment, that we could

13   somehow say that we were not subject, that Universal by

14   itself, since it's a German investor, might say, well, other

15   members of the-- it's not clear what their argument is.  It

16   seems that they want to say that we could then go to Germany

17   and institute another action against First Marblehead.

18         That's their basic argument as I see it.  You may

19   want to ask them.

20         **THE COURT:**  I will ask them, yes, of course.

21         **MR. HUGHES:**  Yes.  But it's not -- there are a

22   couple of cases -- there is one case that did that at the

23   lead plaintiff stage in the Southern District of New York,

24   GlaxoSmithKline.  And it's I think the only one that I know

25   of that even looked at the issue at the lead plaintiff

1    stage.

2         This is a issue that traditionally is looked at in

3    the class certification stage when the -- if we go forward

4    and Your Honor has to decide who is going to be members of

5    the class, that's where the issue should be raised.  It

6    doesn't, it isn't an issue that needs to be decided now.  In

7    fact, it shouldn't be decided now.

8         Other cases that have looked at the *res judicata*

9    issue, that is, whether an absent foreign class member who

10   would be precluded from bringing an action, they have taken

11   place at the later stage, the class certification stage.

12        And this Court has appointed foreign investors

13   before.  In the Williams v. Elam (ph.) action, Your Honor

14   appointed a lead plaintiff group of six people including an

15   Austrian investor.  In Re: Lurno and Howsky (ph.) the

16   District of Massachusetts appointed three foreign investors,

17   one of whom was a German.  So there is plenty of precedent

18   for this Court in having appointed a foreign lead plaintiff.

19        In this case we are moving with a domestic pension

20   fund.  And the group is a proper group --

21        THE COURT:  Where is that based, Pembroke Pines?

22        MR. HUGHES:  They are in Florida, Your Honor.

23        THE COURT:  Okay.

24        MR. HUGHES:  And before they decided to move at

25   all, they spoke with each other.  One of them, Universal,

1    wanted to move with an institutional lead plaintiff in the

2    United States in case something came up where somebody, a

3    lead plaintiff had to be in court on short notice, so they

4    wanted a U.S. institutional investor.

5          Pembroke also wanted an institutional investor that

6    had held shares through the class period.  They asked their

7    respective counsels is there anybody that we can move with.

8          Pembroke and Universal had a conference call before

9    they filed and talked about if they could move together,

10   what the ground rules would be, what the decision-making

11   process would be for deciding if they had any disagreements

12   about the conduct of the litigation, set up a method for

13   communication and decided that it would be better to have

14   both of them move together.  And that's what they did.

15         The competing movants or at least one of the

16   competing movants, Baltimore County, claims that that is

17   improper, that you can't put two people together, that it

18   was lawyer driven.  But we submitted a declaration to the

19   Court where Pembroke and Universal explained exactly what

20   they did, how they spoke with each other, how they would

21   manage the litigation, how they would control counsel and

22   that they chose Saxena White and Motley Rice as co-lead

23   counsel.  We don't need a liaison counsel or a local counsel

24   because Saxena White has an office in Boston.

25         So -- and the third argument that the competing

1    movements make, particularly Baltimore County, they say that

2    Pembroke Pines, because they did not sell their shares or

3    they did not hold their shares through the end of the class

4    period, that they're going to be an inadequate plaintiff

5    because the defendants are going to attack them because they

6    won't be able to show lost causation under Dura

7    Pharmaceuticals.

8            And this is just a terrible argument, Your Honor.

9    Even Baltimore County in the complaint that they filed said

10   that there was a partial disclosure on December 4, 2007.

11   Pembroke Pines held their shares at least through

12   December 7.  And the case law is clear that a plaintiff --

13   because a partial disclosure in a case about the truth

14   coming out, a plaintiff who holds their shares through that

15   partial disclosure can show loss causation and they're not

16   subject to a unique defense.

17           And I'd just like to point to the Court, point out

18   to the Court three or four cases where this is absolutely

19   clear.  One is the Bearing Point case.  That's 232 F.R.D.

20   534 at 544.  And that's an Eastern District of Virginia case

21   that says, "In cases whereas here there are multiple

22   disclosures, in-and-out traders may well be able to show a

23   loss."

24           **THE COURT:**  May well what?

25           **MR. HUGHES:**  May be able to show a loss.  And

1    that's their term, Baltimore County's term Pembroke as an

2    "in-and-out trader."  Universal is not an in-and-out trader

3    but that's what they call Pembroke.

4         Another case, the Enron case, it says 439 F. Supp.

5    2d 692 at 710.  "Loss causation does not require full

6    disclosure and can be established by partial disclosures

7    during the class period which causes the price of shares to

8    decline."  And that's citing really the lead case on this

9    which is Montoya versus Mom.com, (ph.) 2005 WESTLAW, 1278097

10   at page two.

11        The third case, it's a District of Minnesota case,

12   2005 WESTLAW, 3782255 at page 3.  And they specifically

13   rejected the in-and-out trader argument and stated that

14   selling shares after a partial disclosure is sufficient to

15   satisfy the lost criteria -- loss causation criteria

16   established by Dura.  Consequently the movant will not

17   necessarily be subject to the unique defense that it cannot

18   establish loss causation.

19        And the last one of many is Weiss v. Freidman, and

20   that's 2006 WESTLAW, 197036 at page 5, a Southern District

21   of New York case.  And they say, "The movant is not unable

22   to prove loss causation simply because all of its shares

23   were sold before the end of the class period.  As discussed,

24   this is a case involving partial disclosures."

25        So their argument that Pembroke Pines is subject to

1   a unique defense because it won't be able to show loss

2   causation under Dura is just simply wrong.  And those are

3   the three arguments that the other movants have made against

4   Universal and Pembroke Pines.

5          And I'll be happy to answer any of your questions

6   after they speak, Your Honor.

7          **THE COURT:**  Okay.  Thank you.  Who wants to speak?

8          Go ahead.

9          **MR. RADO:**  Good afternoon, Your Honor.  I'm Andrei

10  Rado from Labaton Sucharow on behalf of the Baltimore County

11  Employees' Retirement System.

12         And I guess I'd like to start first by addressing

13  what my colleague said earlier about the res judicata

14  defense not being ripe at this point and whether it should

15  be stayed for the class certification.

16         Under the PSLRA, which governs this proceeding, the

17  Court does have to make a Rule 23 determination on the

18  adequacy and the typicality of the lead plaintiff movant.

19         And as the Court knows from its Regal (ph.)

20  decision, the point here is to have a lead plaintiff that's

21  most adequate installed very early in the case.  And the

22  Court's task is to look ahead at any potential defenses that

23  are going to arise that may derail the litigation.

24         So there's always some type of anticipation in

25  looking down the road and seeing, well, what are the

1    defendants likely to say, how serious is that issue likely

2    to be and if it's serious enough the Court must deny the

3    motion to supply the moving party potentially the largest

4    financial interest.

5          And so we -- Baltimore acknowledges that there is a

6    movant out there with a larger interest.  That's simply the

7    starting point.  And we've cited in our papers at least four

8    cases holding that German institutions in particular have

9    problems at the class certification stage and at the lead

10   plaintiff stage because a judgment of this court, a class

11   action judgment will not be recognized in Germany.

12         And the analysis there is that that undermines the

13   superiority of a class action which is one of the

14   requirements of Rule 23.

15         So essentially in the GlaxoSmithKline case out of

16   the Southern District of New York, the lead plaintiff

17   decision, the court said, well, they're going to have these

18   problems at class certification.  In that case, the movant

19   with the largest financial interest was a group of German

20   institutions.  The court said I'm not deciding the issue

21   now, I don't know what I'm going to do.  The record here is

22   very undeveloped and by the time class cert comes around

23   there would have been discovery, a motion to dismiss.  There

24   would have been expert affidavits on the issue, foreign law

25   experts.  So I'm not deciding the issue now but I recognize

1    that it is an issue.  And under Rule 23 I can't appoint

2    somebody who is a potential liability for the class because

3    if the Court down the line holds that it's going to exclude

4    the German institutions or the German purchasers, the class

5    is not going to be -- is going to be left without a

6    representative.

7         **THE COURT:**  Not in this situation though because

8    they have --

9         **MR. RADO:**  Correct.

10        **THE COURT:**  -- an American joint venture.

11        **MR. RADO:**  What they've tried to do here is, in

12   recognition of that problem, they partnered up with a very

13   small institutional investor from Florida.  And it is our

14   position -- and we cite plenty of cases for this in our

15   papers -- a group can't be formed for an improper purpose,

16   basically to patch up the problems of the individual

17   movants.  So they each have to be, they have to have a large

18   financial interest.  They have to be adequate and typical.

19        And I think nothing speaks more to the seriousness

20   of the risk than that an institution with 22 million dollars

21   in losses, a one hundred plus billion dollar fund from

22   Germany would team up with a movant that only has $300,000

23   in losses.  It doesn't make sense.  The only reason why they

24   would do that is because they see it as an issue.

25        And we don't think that it solves the problem

1    because they're not, they don't have a large financial

2    interest.  Baltimore County has an interest of 5.7 million

3    compared to their 300,000.  So I think it's contrary to the

4    statute to appoint a group comprised of two members, one of

5    whom is inadequate because of this *res judicata* issue, and

6    another one, at least thrown in there basically as

7    insurance, who doesn't have the largest financial interest.

8          And if Universal gets knocked out at a later point,

9    the Court will be, likely be faced with motions to intervene

10   by other class members who will say this is a very high

11   profile, very large litigation, and the representative and

12   the lead plaintiff should be someone with a real financial

13   interest, not 300,000.

14         So we think it would be not in the class's interest

15   to appoint that group.

16         **THE COURT:**  Explain to me the issue about your

17   client's purchasing period and the allegation that it is

18   shorter than the purchasing period for other class members.

19         **MR. RADO:**  Yes, I believe --

20         **THE COURT:**  Walk me through that a little bit.

21         **MR. RADO:**  -- the argument by the Inter-Local

22   movant is that our client started buying shares six months

23   into the class period.

24         **THE COURT:**  Six months before or after it started?

25         **MR. RADO:**  Six months after it started.  But they

1    don't cite any authority, and I'm not aware of any that says

2    that a representative, a lead plaintiff has to purchase at

3    the beginning of the class period.  I'm not aware of any

4    such case and it doesn't make sense.

5           You know, they spend about a sentence on it and I'm

6    not sure I understand the argument actually but --

7           **THE COURT:**  Do you want to make the argument?

8           **MR. ALBA:**  Your Honor, sorry --

9           **THE COURT:**  Who did make the argument?

10          **MR. ALBA:**  We did, Your Honor, Inter-Local, the

11   Inter-Local Fund represented by Coughlin Stoia.

12          The argument basically is is that the class period

13   is from August of 2006 to April of 2008.  The argument is

14   that the Baltimore County movant will not be able to say

15   that it relied on the statements throughout the class period

16   like Inter-Local can.

17          **THE COURT:**  Why?

18          **MR. ALBA:**  Because it did not purchase starting at

19   the beginning of the class period until the end of the class

20   period.

21          **THE COURT:**  But what information is different from

22   the starting period to the time that they joined?  What are

23   they disenfranchised from asserting?

24          **MR. ALBA:**  Well, the complaint says that the

25   plaintiff relied on those statements that the company made

1    from the beginning of the class period until the truth (ph.)

2    starting disseminating into the market.  So only Inter-Local

3    can say that, because Inter-Local began purchasing I believe

4    a week after the class period started and can, therefore,

5    say that it relied on all the statements made by defendants.

6          THE COURT:  And you think that that is

7    determinative?  Are there cases that say that that is so

8    significant that --

9          MR. ALBA:  No, Your Honor, they say, I'd like to

10   say a novel approach, but that is our argument.

11         THE COURT:  Okay.

12         Who else wants to speak on the subject?  Anybody.

13         Identify yourself and your client, please.

14         MR. DEL GAIZO:  Your Honor, Gregory Del Gaizo

15   representing plaintiff Carmona.

16         I just wanted to be clear that this is just in with

17   the securities class action right now and the derivative

18   action we'll talk about afterwards I guess.  When you said

19   you were going to, talking about consolidation.

20         THE COURT:  Well, consolidating these cases that

21   are pending before me now.

22         MR. DEL GAIZO:  Right.  Do you mean consolidate the

23   derivative action with the securities?

24         THE COURT:  I mean, you know, perhaps I don't know

25   what you are talking about or I just don't understand.

1          I have a number of cases, I think ten in number

2     here, and the suggestion has been made that they should be

3     consolidated as a matter of business before this Court.

4     Now, what the gravamen of the complaints are, I assume that

5     they were all the same.

6          **MR. PAINE:**  If I could just try to straighten that

7     out, Your Honor?

8          **THE COURT:**  If they are not, I may send this all

9     back for redistribution.

10          **MR. PAINE:**  There should be two separate

11     consolidations.  There are class actions which, as to which

12     the lead plaintiff issues are appropriate and then there are

13     derivative actions.  They are topically related but they're

14     procedurally distinct.

15          In other words, most, most of the people, the

16     people you have been talking to so far are all focused on

17     the class actions.  They each brought an individual class

18     action against my clients.

19          And everybody is in agreement that all, I think

20     seven of them should be consolidated together and there

21     should be one lead plaintiff, et cetera, so we're on the

22     right track with respect to this hearing.

23          The second piece is the derivative cases which

24     essentially argue that there is a breach, there was a breach

25     of fiduciary duty by the company's management in connection

1    with the allegations that are being made in the securities

2    action.  So in a sense the derivative active is a little bit

3    of a tail on the cases but they are distinct.  They're

4    separate defenses procedurally.

5           And basically the agreement of the defendants and

6    the plaintiffs in the derivative cases that the derivative

7    cases ought to be consolidated together and stayed pending

8    the decision on the motions in the class action because I

9    think we all think that to the extent that the class action,

10   that our motion to dismiss the class action, assuming that

11   we make one, is successful, that that will have an impact on

12   both the class action and the derivative action.

13          So I don't know if I was clear but --

14          **THE COURT:**  You were.

15          **MR. PAINE:**  Okay.  Thank you.

16          **THE COURT:**  At least I think I understood you.

17   Maybe we are both in trouble.

18          Go ahead.

19          **MR. DEL GAIZO:**  So I believe that's correct.

20          **THE COURT:**  Okay.  I understand it now.  I didn't

21   have my arms around that.  And I think I have a better

22   understanding of the whole situation now.

23          So we would have two consolidations if this is the

24   way we went, one, the derivative and the other the class

25   action.

1          And with respect to the appointment of a lead

2     counsel or lead plaintiff, that would be for the purpose of

3     the class action and not the derivative.  Have I got that

4     right?

5          **MR. WHITE:**  That's correct, Your Honor.

6          **MR. DEL GAIZO:**  That's correct.  We stipulated with

7     the defendants and the rest of the derivative actions about

8     the lead plaintiff and lead plaintiff counsel structure that

9     we filed with the Court.

10         **MR. PAINE:**  So the PSLRA doesn't apply with the

11    derivative action so you don't need to pursuant to statute

12    appoint the lead plaintiff and approve the lead counsel.

13    However, the defendants -- the plaintiffs in the derivative

14    actions have proposed an organizational structure in the

15    stipulation that we filed with respect to consolidation of

16    the derivative actions.  That would -- and, of course, you

17    will need to consider that structure and approve that as

18    well but that's more of a housekeeping detail as opposed to

19    a dispute amongst the plaintiffs about who is in charge.

20         If it helps, Your Honor, I don't think that the

21    consolidation issue with respect to the derivative case is

22    controversial.  It's purely housekeeping.  And the thing

23    that is really before you today is sorting out who rules in

24    Berlin, if you will, with respect to the class action.

25         **THE COURT:**  Okay.  I see now.  The stipulation that

1    I have relates solely to the three related shareholder

2    derivative actions.

3            **MR. PAINE:**  Correct, Your Honor.

4            **THE COURT:**  Okay.  That is becoming very clear to

5    me now, not crystal clear but very clear.

6            And then we go back to the original inquiry of mine

7    and that is who should be the lead counsel here.  Is the

8    problem with the German ancestry -- it is so politically

9    incorrect to put it that way but that is the way it was I

10   guess -- whether that disqualifies --

11           **MR. HUGHES:**  Your Honor, may I respond -- I'm

12   sorry.

13           **THE COURT:**  Yes, go ahead.

14           **MR. HUGHES:**  May I respond to Baltimore County's --

15           **THE COURT:**  And also, I don't know whether it helps

16   you or hurts you to have put together that little package

17   because in a way you caused me to be concerned of your

18   concern, you know, why would you have this sort of a joint

19   venture with such a small company except to try to make sure

20   that you always had a toehold there.

21           **MR. HUGHES:**  Well, the reason was because each of

22   the institutional investors, Universal and Pembroke Pines,

23   first of all, the current counsel for Pembroke Pines had

24   represented Universal before and so they each had

25   independent reasons for wanting to move together.  Universal

1    because they wanted to have a U.S. lead plaintiff, somebody

2    who could get to the courthouse quickly if they needed to.

3    Pembroke Pines wanted someone who held through the end of

4    the class period so that they could claim as much of the

5    loss as possible.

6          Now, the cases that Baltimore County cites, I mean,

7    those are outlier cases, Your Honor.  Those are four cases,

8    three of which were decided at the class certification

9    stage.  Only one was at the lead plaintiff stage, the

10   GlaxoSmithKline case.  And even since that decision courts

11   have been clear that this is not a concern at the lead

12   plaintiff stage.

13         The Morganti Big Band Networks (ph.) case decided

14   February of this year, they recognize the *res judicata*

15   argument was insufficient to rebut the presumption that the

16   foreign movant is the most adequate plaintiff.  That was a

17   lead plaintiff decision.

18         The Corwin v Sizinger (ph.) case, this had to do

19   with GPC Biotech, that was the company -- it was a

20   securities class action.  That's 2008 WESTLAW 123846.  This

21   is a case in which the court appointed a Luxembourgian as a

22   foreign lead plaintiff and noted that other courts in this

23   district have appointed foreign investors as class

24   representatives in securities class actions that included

25   both foreign and U.S. purchasers of a foreign company's

1    shares.  That court appointed Baltimore County's counsel.

2    They represented a foreign investor in that class action.

3           And then in the Eastern District of Pennsylvania

4    recently in the Select Medical case, that's 246 F.R.D. 480,

5    they rejected the application of Vivendi -- that's the class

6    certification case that Baltimore County relies on -- and

7    they have approved an Austrian class representative and

8    noted that such a speculative *res judicata* argument is

9    simply not sufficient to support the exclusion of the

10   Austrian movant, especially when they are otherwise entitled

11   to sue in U.S. Courts.

12          The cases that they are talking about, Your Honor,

13   involve foreign plaintiffs who bought a foreign company's

14   securities on a foreign market.

15          It's understandable why the U.S. court might have

16   some small concern that if it took the case, A, it would

17   have subject matter jurisdiction problems, but then since

18   everything happened overseas, that they might just go ahead

19   and do whatever they want later.  That's not the case here,

20   Your Honor.

21          Universal and Pembroke Pines bought a U.S.

22   company's securities on the New York Stock Exchange.  This

23   case, as the Mardens versus Select Medical (ph.) case said,

24   it falls squarely under the jurisdiction of the United

25   States Courts.

1          Also this, the *res judicata* issue is, it's so

2     remote.  I mean, they give this hypothetical, what if this

3     happened and somebody might be able to sue in the foreign

4     court and disregard the judgment of the court.  I think we

5     have to ask ourselves how if it's a U.S. stock, U.S. company

6     bought in the U.S. Exchange, how is a foreign investor going

7     to get their country to take jurisdiction over that case?  I

8     mean, is that a realistic concern?  And we submit, Your

9     Honor, that it's just simply not.

10          **THE COURT:**  Okay.  Let me hear you out.

11          **MR. RADO:**  Yes, I'm going to just address

12     specifically what my colleague mentioned.

13          Most of these rulings have come in cases where the

14     company is foreign but it's clear in the decisions that the

15     basis is *res judicata*, not subject matter jurisdiction.  And

16     you often see the two cases come up under the same facts but

17     they're distinct issues.

18          In the Vivendi case, which is like a 40-page

19     opinion, very thorough, the court actually finds that it

20     does have jurisdiction over the claims of German purchasers

21     because the venue, which is a French company, had enough

22     conduct in the U.S. to allow the U.S. court to exercise

23     jurisdiction over that but nevertheless holds that because

24     Germany will not recognize the judgment of a U.S. court,

25     it's not going to certify the class because it's

1    meaningless.  Why should the court go to the trouble of

2    managing that aspect of the class and then, I mean, it

3    doesn't mean anything to people in Germany.  So those are

4    distinct issues.

5          There is one case that was cited in the papers, In

6    Re: Discovery Labs, out of the Eastern District of

7    Pennsylvania.  Discovery Labs is a Pennsylvania-based

8    company.  And in that case the court held that a German

9    institutional investor Opan (ph.) was inadequate because of

10   the res judicata issue.  And that involved a domestic

11   company whose stock was purchased on the domestic exchange.

12         Another point is that, my colleague mentioned that

13   courts appoint foreign movants all the time but that's

14   really too broad.  The issue isn't whether or not, you know,

15   it's not just foreign.  It's specifically German

16   institutions and the German purchasers.

17         And in the Vivendi case what the court did is go

18   through, I believe it was seven or eight countries in Europe

19   and say they're going to recognize it here, they're not

20   going to recognize it here, they're not going to recognize

21   it here, and at the end I believe excluded only purchasers

22   from Germany and Austria.  I think he let in French

23   purchasers, people who purchased on the London Exchange and

24   some other countries.  So it's not as broad as all that.

25         We're not asking the Court to hold that foreign

1    purchasers are inadequate.  In fact, that's not why we're

2    here.  I'm not here to argue against them.  I'm here simply

3    to say that this is a risk.  And if and when it manifests,

4    they're going to be knocked out and it's going to be a

5    problem.  At the very least it will be a distraction for the

6    class and it will prove to be inefficient.

7          **THE COURT:**  What about, your company is the one

8    that has the -- if I asked you this already, please forgive

9    me -- your purchasing period is shorter than the others; is

10   that a --

11         **MR. RADO:**  Again, I'm not --

12         **THE COURT:**  You are representing Baltimore County?

13         **MR. RADO:**  Correct.  They started purchasing six

14   months into the class period.  My colleague who represented

15   the movant who made that argument stated it was a novel

16   approach --

17         **THE COURT:**  We discussed that.

18         **MR. RADO:**  Yes.  I don't understand what the

19   problem is.  I understand what he is saying, that, well, if

20   they purchased in August, then how could they say that they

21   relied on a statement that was made in April?  But I'm not

22   aware of any decision that says a lead plaintiff has to

23   have -- has to be able to show reliance in every single

24   state --

25         **THE COURT:**  They didn't have to be first in line.

1     **MR. RADO:**  No, they didn't have to be first in

2     line.  Class actions usually involve dozens of individual

3     statements made by defendants in press releases, in SEC

4     filings, on conference calls.  And it's never the case that

5     the lead plaintiff or class rep has to be able to show

6     reliance with respect to every single statement.

7          And as he admitted, there is no, there is nothing

8     on point on that.

9          **THE COURT:**  Now, if I allow this consolidation and

10    issue an order, I am going to be looking for a consolidated

11    amended complaint.  How long do you anticipate -- let's just

12    say that since you have got more money involved in this --

13    we are not saying that you are the presumptive winner here

14    but maybe you will be -- how long do you see it taking you

15    to come up with a consolidated complaint?

16         **MR. HUGHES:**  I'd like 90 days, Your Honor, but we

17    could try to do it in 60.  That's pretty short time but we

18    could do that.

19         **THE COURT:**  Does anybody have anything else you

20    want to add to the -- I am going to take this under

21    advisement and issue an order.

22         **MR. HUGHES:**  I have one more thing, Your Honor.

23         **THE COURT:**  Go ahead.  I will hear everybody.

24         **MR. HUGHES:**  We cited in footnote five of our

25    second brief a list of cases in which foreign plaintiffs

1    have been appointed lead plaintiff.  And of those foreign

2    plaintiffs that were appointed lead plaintiff, the following

3    ones were German and Austrian, the ones that Baltimore

4    County says should not be appointed ever:

5            Dell, which was a year, a year and a half ago,

6    Chicago Bridge and Iron, Inspire Pharmaceuticals, GMC, New

7    York Community Bank Corp., Delphi, Washington Mutual,

8    Corinthian Colleges and Goodyear.

9            And they're all cases that have appointed German or

10   Austrian lead plaintiffs in securities class actions.  So

11   the number of cases that have appointed German or Austrian

12   or foreign lead plaintiffs compared to the cases that have

13   had any concerns about this, it's not even close.  The ratio

14   is, what, four to one, five to one, six to one.  So it

15   happens all the time.

16           **THE COURT:**  Okay.  Go ahead.

17           **MR. RADO:**  I'd just like to finish up by pointing

18   out that a lot of these cases that I've talked about have

19   been very recent.  I don't know, I'm not sure to what extent

20   the issue was briefed or even considered in all of those

21   cases.

22           Of the cases I discussed, the oldest one was in

23   2006 and it unfortunately appears to represent a growing

24   trend in the law where they exclude certain purchasers.  And

25   it's our concern over that that the class be adequately

1    represented.  That's why we're here and that's why we're

2    saying that Baltimore should be appointed.

3         **THE COURT:**  Okay.  You wanted to say something?

4         **MR. PAINE:**  The only thing I wanted to say was just

5    to say out loud that the reason why we haven't been

6    participating in this argument on the defense side is your

7    decision in the Grebel (ph.) case that said it was none of

8    our business.

9         So I -- and we are not quarreling with that

10   decision.  We just want to make it clear that there have

11   been various and sundry things said that we might, that we

12   might disagree with it but it's not pertinent to your

13   decision today and we are sitting on our hands.

14        **THE COURT:**  Okay.  Thank you.

15        **MR. ALBA:**  Your Honor, just a few quick points.

16        No. one, we also agree with Baltimore County's

17   assessment of Universal's being subject to that unique

18   defense of *res judicata*.

19        And then counsel for Universal has made two

20   comments that kind of bothered me.  No. one is that he said

21   that the two movants had decided to move together

22   independently of counsel.  But the two movants each have

23   their own counsel, one, Universal I believe is represented

24   by Saxena and Pembroke by Motley Rice or vice versa.

25        **MR. HUGHES:**  Vice versa.

1          **MR. ALBA:**  Vice versa.

2          So I don't understand how two movants with two

3    different lawyers independently called each other up and

4    said I think we should work together.

5          No. two, counsel for Universal has admitted that

6    it's not easy for Universal to come to the United States and

7    that's why they need a domestic investor to be paired with

8    them.  I think that's a concern for the Court, that as the

9    litigation moves on and there is discovery or that Universal

10   has to come to a U.S. court, they can't just say, hey, you

11   know, we can't come today, let's just send Pembroke.  That's

12   not going to work.  That's not going to fly --

13         **THE COURT:**  That is not going to happen here.

14         **MR. ALBA:**  Yes.

15         **THE COURT:**  You let me worry about that.

16         **MR. ALBA:**  Thank you, Your Honor.

17         **THE COURT:**  Who would be the lawyer?  I mean, you

18   can only have one general, one person in charge.  Who would

19   you appoint as the lead counsel?

20         **MR. HUGHES:**  Well, we'd move to have Saxena White

21   and Motley Rice appointed as co-lead counsel, which has

22   happened all the time, but --

23         **THE COURT:**  No, but somebody has to be it.

24         **MR. HUGHES:**  Well, Motley Rice could be it.

25         And the idea about, because they have two different

1    lawyers, apparently I didn't make myself clear.

2           Each movant asked their respective lawyers we would

3    like to move with someone.  It so happened that the lawyer

4    that represents Pembroke Pines used to represent Universal.

5    She contacted Universal's current attorneys and said I have

6    a client that wants to move with someone.  We said we know

7    someone who wants to move with someone.

8           We let them speak with each other.  They had a

9    conference call, the general counsel of Universal and the

10   chairman of the Pembroke Pines Fire and Police Pension Fund.

11   They spoke.  They talked about what they were going to do.

12   They talked how they would control the litigation.  So

13   that's that issue.

14          As far as the ease of discovery, I did not say that

15   they would have a hard time.  I said if the Court wanted

16   somebody here very quickly this day, we wanted somebody in

17   the United States or Universal wanted somebody that could be

18   here immediately, in three hours.

19          **THE COURT:**  I think that is what you did say.

20          **MR. HUGHES:**  I just want to make that clear, Your

21   Honor.  There is not going to be any problem with Universal

22   showing up for depositions or producing discovery at all.

23          **THE COURT:**  Now, do you have a proposed order for

24   me with respect to appointment of counsel?

25          **MR. HUGHES:**  I believe we submitted a proposed

1    order with our opening papers.  I can give you the docket

2    number, I think.

3              THE COURT:  Have you got it?

4              (Whereupon, the Court and the Clerk conferred.)

5              MR. HUGHES:  I don't want to waste the Court's

6    time.  Can I sit down and take a look?

7              THE COURT:  Yes, go ahead, please.

8              (Pause in proceedings.)

9              MR. HUGHES:  Your Honor, if we did, I don't have a

10   copy of it.

11             THE COURT:  I don't think you did because we don't

12   have one either.

13             THE CLERK:  I'm looking.

14             THE COURT:  How long will it take you to give me a

15   proposed order?

16             MR. HUGHES:  A matter of minutes.  I mean --

17             MR. WHITE:  We can have one emailed to the court,

18   Your Honor, this afternoon or fax or by courier.

19             THE COURT:  Why don't you do that.

20             Anything else that I should take up here?

21             Okay.  Thank you everybody.  I will get on this

22   right away.

23             COUNSEL:  Thank you, Your Honor.

24             (WHEREUPON, the proceedings were recessed at 3:10

25             p.m.)

C E R T I F I C A T E


        I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.



        /S/CAROL LYNN SCOTT


        _____

                CAROL LYNN SCOTT
                Official Court Reporter
                John J. Moakley Courthouse
                1 Courthouse Way, Suite 7204
                Boston, Massachusetts 02210
                   (617) 330-1377



**DATE: February 26, 2010**